IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BBC STUDIOS DISTRIBUTION LTD, <br><br> Plaintiff, <br><br> v. <br><br> A1O9W912BUSRO7, et al., <br><br> Defendants. | Case No. 25-cv-06774 <br><br> **Judge Andrea R. Wood** <br><br> **Magistrate Judge Laura K. McNally** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) [50]**

Plaintiff BBC Studios Distribution Ltd ("Plaintiff") responds in opposition to Defendant SANHE Co.Ltd's (Defendant No. 60) and YUTI Co.Ltd's (Defendant No. 70) (collectively, "Defendants") Motion to Dismiss Pursuant to Rule 12(b)(2) [50] ("Defendants' Motion").

For the reasons outlined below, the Court has personal jurisdiction over Defendants and Defendants' Motion should be denied. To the extent there is any ambiguity whether personal jurisdiction is proper, Plaintiff requests that the Court permit Plaintiff to conduct jurisdictional discovery before ruling on Defendants' Motion.

**BACKGROUND**

**I. THE PARTIES**

    **A. The Bluey Brand, BLUEY Trademarks, and Bluey Copyrighted Work**

Bluey is an animated television series created by Joe Brumm in association with Plaintiff and Ludo Studio Pty Ltd, which premiered in October 2018. Declaration of Diane Hamer [16] (the "Hamer Decl.") at ¶ 5. A variety of licensed Bluey products are available, including, among other things, toys such as playsets, figurines, board games, and stuffed toys (the "Bluey Products"). Hamer Decl. at ¶ 6. Under agreement with Ludo Studio Pty Ltd, Plaintiff has full and exclusive

license to use, enforce, and sublicense the trademarks and copyrights of Ludo Studio Pty Ltd in the United States, including, but not limited to, the trademarks identified in the below table (the "BLUEY Trademarks"). *Id.* at ¶¶ 2, 10; *see* Declaration of Jennifer V. Nacht (the "Nacht Decl.") at ¶ 2.

| Registration No. | Trademark |
|---|---|
| 6,662,122 | BLUEY |
| 6,442,598 7,087,215 | BLUEY (stylized logo) |

Plaintiff also has registered the Bluey copyrighted work (the "Bluey Copyrighted Work") with the United States Copyright Office under the title "Bluey" (U.S. Copyright Registration No. PA 2-308-864), issued by the Register of Copyrights on August 25, 2021. *Id.* at ¶ 17; Nacht Decl. at ¶ 3.

### B. Defendants' Unlawful Acts and Purposeful Availment of the United States, Including Illinois

Defendants are sellers on the Walmart.com ("Walmart") e-commerce platform. [43] at 1-2; [17-2] at 21-22, 54-57. Walmart Inc. operates third-party online marketplaces in four markets: (1) the United States, through walmart.com; (2) Canada, through walmart.ca; (3) Mexico, through walmart.com.mx; and (4) Chile, through walmartchile.cl. Nacht Decl. at ¶ 4. When registering for an account on walmart.com, sellers designate the market in which their products will be offered. Nacht Decl. at ¶ 5. By using the walmart.com platform, Defendants directly targeted their business activities toward consumers in the United States, including Illinois. [1] at ¶¶ 2, 25. When creating a walmart.com store and product listings, sellers create shipping templates to determine shipping rates, manage shipping methods, and establish which regions and states they will ship products to, or what regions and states to exclude. Nacht Decl. at ¶ 6.

Defendants directly targeted their activities to Illinois through their Walmart e-commerce stores by advertising, offering for sale, and selling advent calendars and toys using infringing and counterfeit reproductions of the BLUEY Trademarks, and infringing and unauthorized copies of the Bluey Copyrighted Work ("Unauthorized Products") to residents of Illinois. [1] at 2, 25, [17] at 72-77, 84-89; Hamer Decl. at ¶ 20; *see* Nacht Decl. at ¶¶ 7-9; *see* [43] at 1-2; *see* [50] at 2.



*Table 1*

As previously discussed in Plaintiff's Reply in Support of Its Motion for Entry of a Preliminary Injunction [52], when Defendants created their Walmart stores and product listings, Defendants agreed to, among other things, "assure that Products are authentic, authorized for sale,

and not stolen, counterfeit, illegal or misbranded," "only offer Products for sale . . . that may legally be sold and shipped in all U.S. states," and not "list any Product [. . .] that is counterfeit, illegal, stolen, or fraudulent, or infringes any third-party 'Intellectual Property Rights.'" [52] at 3-4.

On January 3, 2025, Plaintiff's investigators ordered an Unauthorized Product from Defendant YUTI Co.Ltd's Walmart store, entered an Illinois address (which was Plaintiff's counsel's address) for the shipping address, and paid for the Unauthorized Product. Nacht Decl. at ¶ 8. Plaintiff received an order confirmation email, which included an order number (Order No. 2000127-16765814), and an estimated delivery date. *Id.* Two days later on January 5, 2025, Plaintiff received a second email that the delivery was cancelled. *Id.*

On February 2, 2025, Plaintiff's investigators ordered an Unauthorized Product from Defendant SANHE Co.Ltd's Walmart store, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Unauthorized Product. Nacht Decl. at ¶ 9. Plaintiff received an order confirmation email, which included an order number (Order Nos. 2000128-55657869), and an estimated delivery date. *Id.* Two days later on January 5, 2025, Plaintiff received a second email that the delivery was cancelled. *Id.*

## II.   PROCEDURAL HISTORY

Plaintiff filed this action on June 19, 2025. [1]. On July 2, 2025, this Court entered a Temporary Restraining Order (the "TRO").[1] [24]. The TRO, among other things, enjoined Defendants from infringing the BLUEY Trademarks and Bluey Copyrighted Work and ordered Walmart to provide expedited discovery regarding Defendants' contact and sales information. [24] at ¶¶ 1-2. On July 10, 2025, pursuant to the TRO, Walmart provided Plaintiff with Defendants'

---

[1] Plaintiff's Motion for Entry of a Preliminary Injunction [32] remains pending. *See* [54].

contact information and the balance of Defendants' Walmart accounts. Nacht Decl. at ¶ 10. Defendants' Motion was filed on September 5, 2025. [50].

# ARGUMENT

Defendants argue the Court lacks personal jurisdiction over them because Defendants "never sold any units of either the accused Bluey product or the Crochet Set" and Plaintiff's investigator's purchases "were never accepted by Defendants nor fulfilled, **because Defendants do not offer Bluey products**." [50] at 2 (emphasis added). Defendants further argue that the "pre-existing Walmart listing . . . was originally designated for a non-Bluey products [sic]" and Defendants "did not create control, or edit the listing content, which was later modified by others to include Bluey-related text and imagery." [50] at 2. Both of these arguments fail.

As a preliminary matter, Defendants do not provide any evidence to support either of these arguments outside of unsupported, self-serving statements by the Defendants. Plaintiff's evidence shows that Defendants advertised, offered for sale, and sold Unauthorized Products to a buyer with an Illinois shipping address, and then *later* cancelled the order. These transactions support a *prima facie* case of personal jurisdiction over Defendants, either under Fed. R. Civ. P. 4(k)(1), or alternatively 4(k)(2).[2] As such, Defendants' Motion should be denied.

## I.  LEGAL STANDARD

Without an evidentiary hearing, the record only needs to support a *prima facie* case of personal jurisdiction. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392-93 (7th Cir. 2020). In evaluating whether this standard is met, the court "take[s] the plaintiff's asserted facts as true and resolve[s] any factual disputes in [plaintiff's] favor." *NBA Properties, Inc. v. HANWJH*, 46 F.4th

---

[2] Plaintiff does not argue that Defendants are subject to general personal jurisdiction in Illinois.

614, 620 (7th Cir. 2022); *Curry*, 949 F.3d at 393 ("Where there is a factual conflict between the record and the defendants' affidavits, we will resolve them in [plaintiff's] favor").

Rule 4(k) provides two avenues to exercising personal jurisdiction over a defendant. *Surgibit IP Holdings Pty, Ltd v. Ellis*, 2015 WL 6128625, at *3 (N.D. Ill. Oct. 14, 2015). Rule 4(k)(1) allows a federal district court to assert jurisdiction over a defendant if the defendant would be subject to the jurisdiction of the state in which the district court sits. *Id*. If the defendant is not subject to personal jurisdiction in any one particular state, and the claim arises under federal law, Rule 4(k)(2) permits a district court to have jurisdiction over the defendant if the defendant has "affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party." *Id*.

### A. Personal Jurisdiction in Illinois Is Proper Under Fed. R. Civ. P. 4(k)(1)

"Illinois state law crafts for itself the broadest possible jurisdiction in its long-arm jurisdiction statute, 735 ILCS § 5/2-209." *UltimateMeasures, Inc. v. Bohnengel*, 2004 WL 906096, at *3 (N.D. Ill. Apr. 27, 2004); *see also TY, Inc. v. Sullivan*, 2002 WL 500663, at *1 (N.D. Ill. Mar. 12, 2002) ("the fact that Defendants' company takes orders and receives payment from Illinois residents directly through its Internet site indicates that jurisdiction is proper" under 735 ILCS § 5/2-209(a)(1)); *see also Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 278 (2d Cir. Sept. 17, 2024) (holding, personal jurisdiction over a China-based e-commerce seller "does not require a shipment. It requires a transaction"). Moreover, a defendant's deliberate and continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, is sufficient to establish specific personal jurisdiction. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 427-28 (7th Cir. 2010).

Specific personal jurisdiction requires that: (1) Defendants' contacts with Illinois show that they "purposefully availed [themselves] of the privilege of conducting business in the forum state

6

or purposefully directed [their] activities at the state," (2) the injury arise "out of the [Defendants'] forum-related activities," and (3) the exercise of personal jurisdiction would "comport with traditional notions of fair play and substantial justice." *NBA Props.*, 46 F.4th at 623.

1. Defendants Purposefully Directed Their Business Activities to Illinois

"In assessing purposeful direction, what matters is [the defendant's] structuring of its own activities so as to target the Illinois market." *Id*. at 624. Defendants argue that the Court does not have specific personal jurisdiction over because "operating a website that is accessible in the forum state, but does not specifically target the forum state, does not create specific personal jurisdiction." [50] at 4. However, no specific targeting is required when defendants, as here, operate "a national [business] aimed at a nationwide audience" with regular sales into a given forum. *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *5 (6th Cir. May 8, 2024) (quotations omitted); *see Curry*, 949 F.3d at 399 ("There is no *per se* requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum."). Where defendants transact with "[Illinois] only after it had structured its sales activity in such a manner as to invite orders from [that forum and others] and developed the capacity to fill them," those entities "cannot now point to its 'customers in Illinois and tell us, "[i]t was all their idea."'" *NBA Props.*, 46 F.4th at 625.

Here, Defendants structured their sales activities to target and exploit the Illinois market. Plaintiff's uncontradicted evidence shows that each of the Defendants offered for sale and completed at least one sales transaction of an Unauthorized Product with an Illinois resident. Nacht Decl. at ¶¶ 7-9. "In *NBA Props*., the Seventh Circuit held that a single sale to a buyer in Illinois was enough to establish personal jurisdiction." *BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, 2022 WL 7501046, at *2 (N.D. Ill. Oct. 13, 2022) (Seeger, J.) (rejecting that

7

personal jurisdiction requires a completed sale and shipment); *Pit Viper, LLC v. The P'Ships, et al.*, Case No. 23-cv-14761 (N.D. Ill. Dec. 9, 2024) (Ellis, J.) (Dkt. No. 100) (unpublished) (same); *see also Am. Girl, LLC*, 118 F.4th at 278 (same). Defendants structured their Walmart stores to accept orders from Illinois residents. *See* Nacht Decl. at ¶¶ 4-6. Defendants then accepted orders and money from Illinois residents and sent confirmation e-mails. *Id*. at ¶¶ 8-9. *See Int'l Star Registry of Illinois, Ltd. v. RGIFTS Ltd.*, 2022 WL 16715889, at *4 (N.D. Ill. Nov. 4, 2022). Defendants "cannot . . . avoid this Court's jurisdiction by apparently [not shipping] a test order for the Counterfeit Product . . ., particularly where [Plaintiff]'s proffered evidence suggests that the cancellation occurred because [Defendants] realized that [Plaintiff]'s investigator had purchased the Counterfeit Product in order to file suit against [Defendants]." *Pit Viper, LLC v. Xi'an Jiaye Tengda Trading Co., Ltd., d.b.a. Bytebyt*, 2024 U.S. Dist. LEXIS 222165, at *12-13 (N.D. Ill. Dec. 9, 2024); *NBA Properties, Inc. v. The P'ships, et al.*, No. 24-cv-10160 (N.D. Ill Dec. 19, 2024) (unpublished) (Dkt. No. 47) (Jenkins, J.) (same). Since Defendants accepted orders from Illinois residents and Illinois residents were able to place orders from Defendants' stores, Defendants structured their business and sales activities to target the Illinois market. *NBA Props.* 46 F.4th at 623.

Defendants argue they "did not accept the test purchases, made no sales or shipments of the accused products into Illinois" [50] at 4. The only supporting evidence Defendants provide are Defendants' affidavits testifying to the same. [50-2] at ¶ 7; [50-3] at ¶ 7. Defendants' statements, without any other supporting evidence, are insufficient to defeat personal jurisdiction in the face of Plaintiff's uncontradicted evidence. *NBA Props.*, 46 F.4th at 620 (the court "take[s] the plaintiff's asserted facts as true"); *see Curry*, 949 F.3d at 393 ("Where there is a factual conflict between the record and the defendants' affidavits, we will resolve them in [plaintiff's] favor.").

Defendants' statements that Plaintiff's test purchases were not accepted are directly contradicted by Plaintiff's evidence that each Defendant completed at least one sales transaction with an Illinois resident. *See* Nacht Decl. at ¶¶ 7-9; *Curry*, 949 F.3d at 393. It does not matter that, after accepting the order and payment for the Unauthorized Products, Defendants attempted to avoid the jurisdictional consequences by not fulfilling the order. *Pit Viper, LLC*, Case No. 23-cv-14761 (Dkt. No. 100, at 9); *NBA Properties, Inc. v. The P'ships, et al.*, No. 24-cv-10160 (N.D. Ill Dec. 19, 2024) (unpublished) (Dkt. No. 47) (Jenkins, J.) ("the Court agrees with other decisions in this district that it cannot allow a defendant to avoid this Court's jurisdiction by apparently cancelling the order days after it was placed . . . because Defendant was ready, willing, and able to ship products to an Illinois address"); *see also NSI International, Inc. v. The P'ships, et al.*, No. 24-cv-11073 (N.D. Ill. Jan. 2, 2025) (unpublished) (Dkt. No. 60) (Jenkins, J.) ("Even assuming the order was cancelled because it never shipped, the Court agrees with other decisions in this district that it cannot allow a defendant to avoid this Court's jurisdiction by apparently cancelling the order after it was placed . . . ."); *see also Am. Girl, LLC,* 118 F.4th at 277 ("The fact that [defendant] cancelled the orders and refunded the purchase price to the customer does not change this conclusion."). Thus, Defendants "'thoroughly, deliberately, and successfully exploited the Illinois market' through [their] use of sales and advertisements to Illinois." *NBA Props.*, 46 F.4th at 623.

Defendants' conduct demonstrates that they purposefully directed their actions towards the Illinois market. *Curry*, 949 F.3d at 399 ("Because [defendant] "knowingly did do business with Illinois residents . . . [,] [defendant's] argument that it did not purposefully avail itself of doing business in Illinois [rang] particularly hollow."); *Illinois v. Hemi Group*, 622 F.3d 754, 758 (7th Cir. 2010) ("[Defendant] stood ready and willing to do business with Illinois residents. And

9

[Defendant], in fact, knowingly did do business with Illinois residents."); *see also NBA Properties, Inc. v. The P'ships, et al.*, No. 24-cv-10160 (N.D. Ill Dec. 19, 2024) (unpublished) (Dkt. No. 47) (Jenkins, J.) (same); *Am. Girl, LLC*, 118 F.4th at 277-79. Accordingly, Defendants "must reasonably anticipate being haled into" Illinois court. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 364 (2021).

### 2. Plaintiff's Injuries are Directly Related to Defendant's Business Activities in Illinois

"'The proper exercise of specific jurisdiction also requires that the Defendants' minimum contacts with the forum state be 'suit-related.'" *NBA Props.*, 46 F.4th at 625. "This requirement is met when direct sales from the defendant in the forum state involve the infringing product." *Id*.

Defendants do not dispute that this action is related to their contacts with Illinois. *See generally* [50]; *see White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived"). Defendants' advertisement, offers for sale, and sales of Unauthorized Products to Illinois are related to Plaintiff's trademark infringement and counterfeiting and copyright infringement claims. *See Pit Viper, LLC*, Case No. 23-cv-14761 (Dkt. No. 100, at 8). As such, Defendants' contacts are "related sufficiently to the harm of likelihood of confusion" of the BLUEY Trademarks and to the unauthorized copying of the Bluey Copyrighted Work. *NBA Props.*, 46 F.4th at 626-27; s*ee Am. Girl, LLC,* 118 F.4th at 278-79 ("We also have little difficulty concluding that [plaintiff] has adequately satisfied the second requirement that 'the claims must arise from the transactions[.]' [Plaintiff's] claims are based on the advertisement, marketing, and sale of allegedly infringing merchandise, and [plaintiff] has provided evidence that New York customers submitted orders and payments for this merchandise through Defendants' websites and received order confirmations from them").

Defendants claim that the test purchases are not suit-related because they are "piggy-back sellers" selling products through a pre-existing Walmart listing and "did not create, control, or edit the listing content, which was later modified by others to include Bluey-related text and imagery."[3] [50] at 2. For the reasons previously provided in Plaintiff's Reply in Support of Its Motion for Entry of a Preliminary Injunction [52], these arguments are meritless, namely because Defendants fail to provide any evidence to support these arguments. Specifically, Defendants do not provide any evidence of a pre-existing Walmart listing which did not include the BLUEY Trademarks or Bluey Copyrighted Work which was later modified by unknown "others" to include the BLUEY Trademarks or Bluey Copyrighted Work.

In any event, to support the exercise of specific jurisdiction, a suit "must arise out of or relate to the Defendants' contacts with the forum," but the relationship need not be strictly causal. *Ford*, 592 U.S. at 359-62 (cleaned up). Instead, due process requires only that the "'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction." *Id*. at 371 (alteration in original). Defendants do not dispute that they generally avail themselves to business in Illinois through their Walmart stores. *See generally* [50]; [50-2] – [50-3]. Defendants' conduct in Illinois is related to Plaintiff's claims because it is the same related conduct (*i.e.*, the sale of related products from the same Walmart e-commerce stores, utilizing the same marketing channels, the same sales mechanisms, and the same distribution and shipping mechanisms). Any "suggest[ion] that [Defendants are] not subject to personal jurisdiction unless [they] sold the allegedly infringing products to customers in Illinois [is] too narrow [a] view of the

---

[3] While Defendants' Motion is a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, Defendants repeatedly represent that they do not offer to sell or sell Bluey Products in the Motion. [50] at 2, 6-7. To the extent Defendants are arguing that this action should be dismissed because Defendants are not liable for Plaintiff's claims, such an argument is meritless, unsupported by the evidence, and should be denied.

11

scope of specific personal jurisdiction." *Roadget Bus. Pte. Ltd.*, U.S. Dist. LEXIS 119991, at *9 (following *Ford*); *see also Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225, at *6-7 (N.D. Ill. Nov. 17, 2015).

        3.        <u>Defendants Fail to Present a Compelling Reason Personal Jurisdiction is Unfair</u>

Defendants argue that Defendants would be burdened by litigating in Illinois, Illinois has "minimal interest" in this case, neither party is based in Illinois, and "neither Defendants have sold or shopped any accused items to Illinois." [50] at 6-7. These arguments are meritless.

First, as discussed above, each of the Defendants have purposely availed themselves to Illinois, and "[where] a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *NBA Props.*, 46 F.4th at 627. Defendants failed to present any compelling consideration that would make jurisdiction unreasonable.

Second, while Defendants may not reside in Illinois and their burden to litigate here "may not be convenient, that comes with the territory. Foreign counterfeiters who attempt to sell fake products here do so at a price, and part of the price is the risk of litigation." *BRABUS GmbH*, 2022 WL 7501046, at *3. Further, "[n]otably, despite any potential claims of hardship, defendants have already retained local counsel and engaged in motion practice in this court." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 909 (N.D. Ill. 2015); *see also* [43]. Defendants' other arguments fare no better; while Plaintiff may not be based out of Illinois, there is a significant and devoted consumer fan base of the Bluey television show in Illinois and "Illinois has an interest in protecting Illinois consumers from being deceived into purchasing [infringing products]." *Monster Energy Co.*, 136 F. Supp. 3d at 909; *see* Nacht Decl. at ¶ 11.

Accordingly, Plaintiff has established a *prima facie* case that this Court has personal jurisdiction over Defendants under Rule 4(k)(1).

### B. Alternatively, Defendants Are Subject to Fed. R. Civ. P. 4(k)(2) Jurisdiction

Even if Defendants' contacts with Illinois are insufficient to support jurisdiction in Illinois, specific personal jurisdiction remains proper under Rule 4(k)(2). When, as here, "the defendant[s] contend[] that [they] cannot be sued in the forum state and refuse[] to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). If a defendant argues that it is not subject to personal jurisdiction in the forum, it has the burden to affirmatively demonstrate which forum would have been proper. *Id.*; *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). The provision was added "to cover persons who do not reside in the United States and have ample contacts with the nation as a whole, but whose contacts are so scattered among states that none of them would have jurisdiction." *ISI Int'l, Inc.*, 256 F.3d at 551.

Any federal district court can exercise personal jurisdiction over Defendants under Rule 4(k)(2) if (1) Plaintiff's claim is based on federal law; (2) no state could exercise jurisdiction over Defendants; and (3) the exercise of jurisdiction is consistent with the laws and Constitution of the United States. *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 852 (N.D. Ill. 2005). Here, Plaintiff's claims are for federal trademark infringement and counterfeiting, and federal copyright infringement. [1]. Defendants' Motion has not identified a state where personal jurisdiction would have been proper at the time of filing. Defendants cannot defeat Rule 4(k)(2) by simply naming another state; the Defendants' burden requires them to identify a forum where Plaintiff could have brought suit—a forum where jurisdiction would have been proper at the time of filing. *Merial Ltd.*, 681 F.3d at 1294. The first and second elements are satisfied. *Id.*; *Flag Co.*, 376 F. Supp. 2d at 853.

13

When analyzing whether exercising jurisdiction is consistent with the laws and Constitution of the United States, courts apply the same "minimum contacts" test but consider Defendants' contacts with the United States as a whole, instead of their contacts with any one particular state. *Flag Co.*, 376 F. Supp. 2d at 854. Plaintiff's claims are for willful trademark infringement and counterfeiting, and copyright infringement, which are intentional torts, that arise from Defendants' sale and offer for sale of Unauthorized Products to the United States. *See Monster Energy Co.*, 136 F. Supp. 3d at 903-04. In this context, courts can apply the "express aiming test" and consider whether Defendants engaged in (1) intentional conduct (or "intentional and allegedly tortious" conduct); (2) expressly aimed at the forum state; (3) with the Defendants' knowledge that the effects (*i.e.*, Plaintiff's injury) would be felt in the relevant forum. *Id.*; *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

      1.      <u>Defendants Engaged in Intentional Tortious Conduct</u>

Plaintiff's uncontroverted evidence shows that Defendants offered for sale and sold Unauthorized Products to Plaintiff's investigators through their Walmart e-commerce stores. Nacht Decl. at ¶¶ 7-9. For the reasons previously provided in Plaintiff's Reply in Support of Its Motion for Entry of a Preliminary Injunction [52], Defendants' advertisement, offers for sale, and sales of the Unauthorized Products violated the Lanham Act and the U.S. Copyright Act. *See* [52] at 5-11. Additionally, "merely listing for sale a product that is likely to cause confusion violates the Lanham Act." *NBA Props.*, 46 F.4th at 626 n.18; *see also Monster Energy Co.*, 136 F. Supp. 3d at 904. As discussed *supra*, Defendants' argument that they are "piggy-back sellers" selling products through a pre-existing Walmart listing and "did not create, control, or edit the listing content, which was later modified by others to include Bluey-related text and imagery" is meritless, namely because Defendants fail to provide any evidence to support these arguments.

14

2. <u>Defendants' Tortious Conduct was Expressly Aimed at the United States</u>

Defendants' contacts with the United States demonstrate Defendants expressly aimed their tortious conduct at the United States. As discussed *supra*, when Defendants created their Walmart stores and product listings, Defendants agreed to, among other things, "only offer Products for sale . . . that may legally be sold and shipped in all U.S. states," and not "list any Product [. . .] that is counterfeit, illegal, stolen, or fraudulent, or infringes any third-party 'Intellectual Property Rights.'" [52] at 3-4. Defendants advertised, offered for sale, and sold Unauthorized Products to United States consumers. [1] at 33; *see also* Nacht Decl. at ¶¶ 7-9. Accordingly, Defendants expressly aimed their tortious conduct at the United States. *See Monster Energy Co.*, 136 F. Supp. 3d at 908.

3. <u>Defendants Knew Plaintiff's Harm Would be Felt in the United States</u>

Given the fame of the Bluey brand, BLUEY Trademarks and the Bluey Copyrighted Work, Defendants cannot credibly claim ignorance. *See*, *e.g.*, *Monster Energy Company v. Wensheng*, No. 15-cv-04166, 2016 WL 11941986, at *3 (N.D. Ill. June 30, 2016). Sales of Unauthorized Products monetarily and irreparably harm Plaintiff, and unfairly diminish Plaintiff's American market share. *See* [1] at ¶ 34. As such, Defendants knew the harm suffered by Plaintiff by their tortious conduct would be felt in the United States. *Monster Energy Co.*, 136 F. Supp. 3d at 908.

Accordingly, Plaintiff has established a *prima facie* case that this Court has personal jurisdiction over Defendants under Rule 4(k)(2).

## **CONCLUSION**

For the foregoing reasons, the Court has personal jurisdiction over Defendants and Defendants' Motion should be denied. To the extent the Court finds that there is any ambiguity the record supports a *prima facie* case of personal jurisdiction, Plaintiff requests that the Court permit the parties to conduct jurisdictional discovery before ruling on Defendants' Motion.

Dated this 10th day of October 2025.

Respectfully submitted,

<u>/s/ Justin R. Gaudio</u>
Amy C. Ziegler
Justin R. Gaudio
Luana Faria de Souza
Madeline B. Halgren
Jennifer V. Nacht
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
lfaria@gbc.law
mhalgren@gbc.law
jnacht@gbc.law

*Counsel for Plaintiff BBC Studios Distribution Ltd*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of October 2025, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system. The CM/ECF system will send a "Notice of E-Filing" to the attorneys of record in this case.

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Luana Faria de Souza
Madeline B. Halgren
Jennifer V. Nacht
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
lfaria@gbc.law
mhalgren@gbc.law
jnacht@gbc.law

*Counsel for Plaintiff BBC Studios Distribution Ltd*
