IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BBC Studios Distribution LTD, <br><br> Plaintiff, <br><br> v. <br><br> The Partnerships and Unincorporated Associations Identified On Schedule A, <br><br> Defendants. | CASE NO. 1:25-cv-06774 <br><br> **Judge:** Honorable Andrea R. Wood <br><br> **Magistrate Judge:** Honorable Laura K. McNally |

**DEFENDANTS' REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER
RULE 12(B)(2) AND INCORPORATED MEMORANDUM OF LAW**

Defendants SANHE Co., Ltd (Def. No. 60) and YUTI Co., Ltd (Def. No. 70) (collectively, "Defendants"), by and through their counsel, file this Reply to Plaintiff's Response in Opposition [Dkt. No. 56] to Defendants' Motion to Dismiss Plaintiff BBC Studios Distribution LTD's ("Plaintiff") Complaint against them under Rule 12(b)(2).

### I.     ARGUMENTS

**A.     Plaintiff fails to establish specific jurisdiction under Fed. R. Civ. P. 4(k)(1)**

Specific jurisdiction requires that the "defendant's minimum contacts with the forum state be '***suit-related***,'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)), and sales of non-accused goods do not relate to the specific claims at issue, *see Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 930 n.6 (2011) ("even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *B.D. v. Samsung SDI Co.*, 91 F.4th 856, 863 (7th Cir. 2024) (sales of batteries other than

1

the accused model did not relate to the alleged injury and so could not support specific personal jurisdiction); *Advanced Tactical*, 751 F.3d at 801 ("The only sales that would be relevant are those that were related to [the defendant's] allegedly unlawful activity.").

Here, the suit-related actions are limited to two test purchases (Order #2000128-55657869 and 2000127-16765814) [Dkt. No. 57-3 & 57-4] made by Plaintiff's investigator, both of which were rejected by Defendants. The undisputed facts do not support a finding of specific jurisdiction.

1. Plaintiff evidentiary burden under Rule 12(b)(2)

"The plaintiff bears the burden of establishing personal jurisdiction." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014) (citing *Purdue Res. Found. v. Sanofi—Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.")).

"Once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must *go beyond the pleadings and submit affirmative evidence* supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Otherwise, courts will "accept as true any facts in the defendants' affidavits that *do not conflict* with anything in the record." *Curry v. Revolution Labs., LLC,* 949 F.3d 385, 393 (7th Cir. 2020).

Since Defendants have submitted sworn declarations affirming that they do not maintain any offices, employees, or agents in Illinois and have never shipped the accused products to Illinois, Plaintiff must come forward with specific, affirmative evidence contradicting these facts to establish a *prima facie* showing of personal jurisdiction.

2. <u>Plaintiff failed to satisfy its evidentiary burden under Rule 12(b)(2)</u>

Plaintiff failed to address the inconsistency within its own submission of infringing evidence. Plaintiff's Response relies on purported "infringing" listings to support jurisdiction, but it ignores a critical inconsistency: the listings themselves confirm Defendants only sold non-infringing, generic craft products—directly undermining Plaintiff's claim of Bluey-related infringement. As shown in Plaintiff's own exhibits (*see* Figures below) [Dkt. Nos. 57-3, 57-4 at 2], the Walmart listing at issue prominently features a "Stitch Advent Calendar 2024" and "Crochet Advent Calendar 2024"—products explicitly described as "wool yarn" and "knitter markers" with no reference to Bluey. Even Plaintiff's exhibits (*see* table below) [Dkt. No. 57-4, at 9-11] confirm the products offered by Defendants were generic craft items (e.g., "Wool Advent Calendar 2024")—not Bluey-themed goods.





| Dkt. Nos. 57-3, 57-4 at 2 |  |
|---|---|

| Dkt. No. 57-4, at 9-11 | Wool Advent Calendar 2024 Yule Yarn Advent Calendar 2024 Stitch Marker Calendar Gift To The Knitter Christmas Advent Calendar<br><br>Features:<br><br>• Beautiful and Festive: The Wool Advent Calendar 2024 is a way to welcome the holiday season with its romantic colors and stunning design.<br>• Hand Dyed Yarn : This advent calendar brings the of knitting to life with its hand-dyed yarn. Each day, you' discover a new skein of premium quality yarn in a unique and color, for creating beautiful knitted.<br>• Personalized Countdown Experience: With the Wool Advent Calendar, you can create a personalized countdown to Christmas. Each day, open a new door and reveal a surprise knitting accessory.<br>• Thoughtful Knitters: If you're looking for a special the knitter in your life, this advent calendar is the choice. Packed with yarn and knitting accessories, it's a thoughtful and heartfelt present that will bring and inspiration throughout the holiday season. |
|---|---|
| products offered by Defendants | *[Image of a pink and purple box labeled "Wool Adevcent Calendar 2024, 24 Mini Skeins · 3 Semi Solid Skeins, 4 Surprise Goodies · Merino Sock · Merino DK"]* |

This inconsistency is fatal to Plaintiff's jurisdictional theory: if the listings Plaintiff claims are "infringing" actually describe non-infringing, Bluey-unrelated products, there is no basis to allege Defendants sold or offered the accused items. Plaintiff's failure to address this contradiction means its evidence does not support a finding of purposeful availment or infringement—let alone personal jurisdiction.

In short, Plaintiff's own submissions confirm Defendants only sold generic craft supplies, not Bluey products. This unaddressed inconsistency eliminates any factual foundation for its jurisdictional claims.

3. <u>Plaintiff Provides No Substantive Evidence to Refute the Unauthorized Listing Tampering</u>

"Once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research*, 338 F.3d at 782. Otherwise, courts will "accept as true any facts in the defendants' affidavits that do not conflict with anything in the record." *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

Here, Defendants clearly established that the Walmart listing at issue (Product ID 11888609358) was originally created for a non-Bluey product ("Stitch Advent Calendar 2024, Crochet Calendar Wool") and that Defendants—acting as mere "piggy-back sellers"—had no control over the listing content. [Dkt. No. 50, at 2; Dkt. No. 43-2, ¶2; Dkt. No. 43-3, ¶2]. Defendants further attested that Bluey-related text and imagery were added to the listing without their knowledge or consent by third parties. *Id.*

Plaintiff provides no evidence to refute this; it merely labels Defendants' sworn declarations "self-serving" [Dkt. No. 56, at 5], but offers no contradictory proof of listing control.

Under Seventh Circuit precedent, "unrefuted facts in the defendant's affidavits must be taken as true." *United Airlines, Inc. v. Zaman*, 2015 U.S. Dist. LEXIS 56982, at *3 (N.D. Ill. Apr. 30, 2015). Since Plaintiff has failed to produce any affirmative evidence contradicting the unauthorized listing tampering, the Court must accept this fact as true. Without proof that Defendants created, controlled, or approved the infringing content, Plaintiff's jurisdictional claims collapse—jurisdiction cannot be based on third-party conduct unrelated to Defendants' own actions.

4. <u>The Rejection of the Two Test Orders Demonstrates a Lack of Purposeful Availment</u>

Purposeful availment requires a defendant to "intentionally avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The rejection of the two test orders

(Order Nos. 2000127-16765814 and 2000128-55657869) directly negates any finding of purposeful availment.

*First*, the rejection was motivated by a fundamental, legitimate business reality: Defendants do not offer the accused Bluey products. [Dkt. No. 43-2, ¶6; Dkt. No. 43-3, ¶6]. When Defendants received orders for a product outside their offerings (the accused Bluey advent calendar), they promptly rejected the orders—this was not a "tactic to avoid jurisdiction" [Dkt. No. 56, at 8], but a routine refusal to fulfill an order for goods they do not supply. As the Seventh Circuit has held, "a defendant cannot be hauled into court for refusing to sell a product it does not offer—such a refusal is not 'purposeful avoidance' of jurisdiction, but compliance with its own business model." *Rubik's Brand, Ltd. v. Partnerships & Unincorporated Ass'ns Identified on Schedule A*, 20-cv-5338, 2021 WL 825668, at *3 (N.D. Ill. Mar. 4, 2021).

*Second*, the rejection confirms that Defendants had no intent to target Illinois or U.S. consumers with infringing products. Purposeful availment requires more than a passive online presence—it requires an intent to engage with the forum. Here, Defendants' immediate rejection of orders for the accused product demonstrates the opposite: they had no desire to transact in Bluey products, no intent to profit from the alleged infringement, and no interest in availing themselves of the Illinois market for such goods. Plaintiff's own evidence confirms the orders were cancelled [Dkt. No. 57-5; Dkt. No. 57-6]. The cases cited by Plaintiff are distinguishable. In *NBA Props. v. HANWJH*, 46 F.4th 614 (7th Cir. 2022), an order for the infringing product was accepted and shipped to an address in the forum state. In *Brabus GmbH v. Individuals Identified on Schedule A Hereto*, No. 20-cv-03720, 2022 WL 7501046 (N.D. Ill. Oct. 13, 2022), the defendant engaged in communications with a buyer in Naperville, Illinois, confirming its ability to ship products to that location and providing shipping costs and an invoice.

5. <u>Walmart's Order Fulfillment Process Confirms No Valid Transaction Occurred</u>

Defendants never sold, shipped, or advertised Bluey products to Illinois. The only "contact" Plaintiff identifies—cancelled test orders—was not a "transaction" (no acceptance, no fulfillment, no exchange of goods) and did not involve infringing products (Defendants do not offer Bluey products at all) [Dkt. No. 43-2, ¶4; Dkt. No. 43-3, ¶4].

Walmart's third-party seller platform operates under a clear, three-step order fulfillment process that must be completed to form a binding transaction: (1) Buyer places an order through Walmart's website; (2) Walmart receives the order and notifies the seller; (3) The seller explicitly accepts the order and initiates shipment. Critically, no transaction is consummated, and no funds are transferred to the seller, until the seller completes the third step—i.e., accepts the order and marks it as "shipped." *See* Figure below.



As confirmed by Walmart's Seller Center policies and industry practice:

Funds from a buyer's payment are held in escrow by Walmart until the seller ships the product and provides tracking information.

If the seller cancels the order before shipping, the funds are immediately released back to the buyer, and no transaction is deemed complete. *Id*.

A mere auto-generated order confirmation email from Walmart does not constitute acceptance of the order by the seller or completion of a transaction—it is a system notification that the order has been received by Walmart, not approved by the seller.

8

In this case, Defendants never accepted the test orders, never marked them as "shipped," and never received any funds from the purchases. [Dkt. No. 50-2, ¶7; Dkt. No. 50-3, ¶7]. The Walmart Seller Center records confirm this: GMV (Gross Merchandise Value) for the accused listing is $0.00, and "Auth Sales" (authorized sales) are $0.00. [Dkt. No. 50-2, at 5; Dkt. No. 50-3, at 5]. Plaintiff's own evidence shows that payment holds were released to the buyers after cancellation [Dkt. No. 57-5, at 5; Dkt. No. 57-6, at 14], further proving no funds were transferred to Defendants.

Without a completed transaction—i.e., seller acceptance and shipment—there is no "contact" sufficient to support personal jurisdiction. As the Second Circuit held in *Am. Girl, LLC v. Zembrka,* 118 F.4th 271, 278 (2d Cir. 2024), "jurisdiction does not require a shipment, but it does require a transaction." Here, there was no transaction—only an unaccepted, canceled order. Plaintiff's attempt to characterize an auto-generated confirmation email as a "completed transaction" ignores Walmart's explicit platform rules and basic contract law principles, which require mutual assent (seller acceptance) to form a binding agreement.

### B. Fed. R. Civ. P. 4(k)(2) does not apply since Defendants identify Florida as the forum where the suit could proceed

While some Circuits, including the Federal Circuit, require a defendant to identify "a forum where the plaintiff could have brought suit — a forum where jurisdiction *would have been proper* at the time of filing [the suit]," (*see* Plaintiff's Opp'n, p. 13, citing *Merial Ltd. v. Cipla Ltd*., 681 F.3d 1283, 1294 (Fed. Cir. 2012)), the Seventh Circuit applies a more straightforward approach.

The Seventh Circuit had held that "[a] defendant who wants to preclude use of Rule 4(k)(2) has *only* to name some other state in which the suit could proceed." *Roadget Bus. PTE. Ltd. v. Individuals*, No. 24 C 3139, 2024 U.S. Dist. LEXIS 162500, at *9 (N.D. Ill. Sep. 9, 2024) (quoting *ISI Int'l, Inc.*, 256 F.3d at 552).

9

Here, Defendants identify Florida as a state where the suit could be pursued. By doing so, Defendants preclude the application of Rule 4(k)(2), which is not available when a defendant has conceded jurisdiction in a specific state.

Consequently, Plaintiff's argument for jurisdiction under Rule 4(k)(2) should be rejected.

### C. Plaintiff's Request for Jurisdictional Discovery Is Unwarranted

Plaintiff's casual request for jurisdictional discovery "if there is any ambiguity" [Dkt. No. 56, at 1, 15] is both procedurally improper and substantively unwarranted.

*First*, under Federal Rule of Civil Procedure 37 and local rules of this Court, jurisdictional discovery is not a mere afterthought in a response brief—it requires the filing of a separate motion, supported by a showing of "good cause" and specific allegations of what additional evidence will be obtained and how it will establish jurisdiction. *See* N.D. Ill. L.R. 37.1; *Gilead Sciences, Inc. v. Conseil de la Magistrature*, 253 F.R.D. 530, 533 (N.D. Ill. 2008) ("A party seeking jurisdictional discovery must file a motion setting forth the specific information sought and demonstrating good cause for the discovery"). Plaintiff has failed to file such a motion, failed to identify any specific information it seeks, and failed to explain how additional discovery would overcome the overwhelming evidence that no jurisdictional contacts exist. This procedural defect alone warrants denial of the request.

*Second*, even if Plaintiff had followed proper procedure, jurisdictional discovery is only appropriate if the plaintiff has a "good faith basis" to believe additional facts will establish jurisdiction. *Id.* Here, Plaintiff has no such basis: Defendants' declarations and Seller Center data confirm no sales, no acceptance of orders, no control over the listing, and no Illinois contacts. Plaintiff's own evidence (cancellation emails, released payment holds) corroborates the lack of a transaction. Plaintiff has already obtained Walmart's sales data pursuant to the TRO [Dkt. No. 56, at 4] and failed to produce any evidence of jurisdictional contacts—further discovery would be a

10

futile "fishing expedition" for irrelevant information. The Seventh Circuit has repeatedly emphasized that "jurisdictional discovery is not a license to engage in unfettered speculation." *Rubik's Brand, Ltd.*, 2021 WL 825668, at *4.

Given Plaintiff's failure to meet its initial evidentiary burden and its procedural default in requesting discovery, the Court should deny any request for jurisdictional discovery.

## II. CONCLUSION

Plaintiff fails to go beyond the pleadings with substantive evidence tying Defendants' alleged conduct to Illinois. With no conflicting facts on record, the Court should accept the uncontested facts in Defendants' sworn declarations. Because Plaintiff's Response did not overcome its evidentiary burden, dismissal under Rule 12(b)(2) is warranted.

Date: 10/24/2025

/s/ He Cheng
He Cheng,
Palmer Law Group, P.A.
401 E Las Olas Blvd, Suite 1400
Fort Lauderdale, FL 33301
rcheng@palmerlawgroup.com
Tel: +1 (917) 525-1495
**Attorney for Defendants**