IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BBC STUDIOS DISTRIBUTION LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 25-cv-06774 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| THE PARTNERSHIPS AND ) | |
| UNINCORPORATED ASSOCIATIONS ) | |
| IDENTIFIED ON SCHEDULE A, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This Order memorializes the Court's oral ruling on 12/22/2025 [70] denying Defendants SANHE Co. Ltd and YUTI Co. Ltd's motion to dismiss pursuant to Rule 12(b)(2) [50] and granting Plaintiff's motion for entry of a preliminary injunction [32] but, with respect to Defendants SANHE Co. Ltd and YUTI Co. Ltd, declining to impose an asset restraint. In addition, Plaintiff's motion to strike portions of Defendants' reply and declarations [62] is denied. See the accompanying Statement for additional details.

**STATEMENT**

Plaintiff BBC Studios Distribution Ltd. ("BBC Studios") owns federally registered copyrights and trademarks related to its animated television series, Bluey. In this suit, BBC Studios alleges that the 71 defendants listed in Schedule A to the Complaint (Dkt. No. 2) have infringed those copyrights and trademarks by offering goods for sale on their online marketplaces using one or more of the copyrights or trademarks. This Court previously entered an *ex parte* temporary restraining order ("TRO"), including an asset restraint, against all defendants. (Dkt. No. 24.) After BBC Studios moved for a preliminary injunction, two defendants, SANHE Co. Ltd ("SANHE") and YUTI Co. Ltd ("YUTI") (together, "Appearing Defendants"), appeared, filed a brief in opposition to the preliminary injunction, and responded to the Complaint by filing a motion to dismiss the claims against them for a lack of personal jurisdiction. The remaining defendants listed in Schedule A ("Non-Appearing Defendants") have not appeared in any way. At the status hearing on December 22, 2025, the Court denied Appearing Defendants' motion to dismiss and granted BBC Studios's motion for a preliminary injunction, while limiting the preliminary injunctive relief against Appearing Defendants. This Order expounds upon the basis for the Court's ruling.[1]

---

[1] BBC Studios also filed a motion to strike portions of Appearing Defendants' reply and declarations (Dkt. No. 62). The Court denies the motion and considers the full contents of the parties' submissions.

## I. Appearing Defendants' Motion to Dismiss

When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) without an evidentiary hearing, "the plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction." *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). In considering the motion, the Court must "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *Id.* If the parties submit affidavits concerning personal jurisdiction, the asserted facts are accepted as true and, "where they conflict, the plaintiff is entitled to resolution in its favor." *Id.*

Here, the parties dispute whether the Court has specific personal jurisdiction over Appearing Defendants.[2] Where, as here, no applicable federal statute authorizes nationwide service of process, personal jurisdiction is governed by the law of the forum state; in this case, Illinois. Fed. R. Civ. P. 4(k)(1)(A); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011).[3] Illinois's long-arm jurisdiction statute permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. 735 ILCS 5/2-209; *see also be2 LLC*, 642 F.3d at 558 ("The Illinois long-arm statute . . . permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the United States."). Three requirements must be met for a court's exercise of specific personal jurisdiction to be constitutionally permissible. First, the defendant must have "minimum contacts" with the forum state, meaning that it would "reasonably anticipate being haled into court" there because it "has purposefully availed itself of the privilege of conducting activities there." *Kinslow v. Pullara*, 538 F.3d 687, 691 (7th Cir. 2008). Second "the litigation must relate to" the defendant's contacts with the forum. *NBA Props.*, 46 F.4th at 621. Third, the exercise of jurisdiction must "not offend traditional notions of fair play and substantial justice." *Id.* The Court addresses each requirement in turn.

In considering whether Appearing Defendants have "minimum contacts" with Illinois, "[t]he focus is whether [they] purposefully directed [their] conduct at Illinois." *Id.* at 625. The leading case in this Circuit addressing personal jurisdiction over online retailers based abroad is *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022). In that case, the Seventh Circuit held that a federal court in Illinois could properly exercise personal jurisdiction over a foreign defendant that "established an online store, using a third-party retailer," "unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so," and fulfilled a test order by "shipping an infringing product to" Illinois. *Id.* at 624. In finding minimum contacts, the Seventh Circuit rejected the defendant's contention that "a single transaction cannot be sufficient to establish jurisdiction," noting that such a "rigid numerical line" would flout the Supreme Court's warning against "[t]alismanic jurisdictional formulas." *Id.* at 624–25 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 485 (1985)).

---

[2] The parties do not dispute that the Court lacks general personal jurisdiction over Appearing Defendants.

[3] BBC Studios argues, in the alternative, that personal jurisdiction is proper under Rule 4(k)(2), which provides for jurisdiction over foreign defendants in certain circumstances. *See* Fed. R. Civ. P. 4(k)(2). The Court need not reach this argument because it finds personal jurisdiction under Rule 4(k)(1).

The present case presents circumstances similar to those in *NBA Properties*, except that Appearing Defendants cancelled BBC Studios's test order before shipment. BBC Studios has submitted evidence showing that each Appearing Defendant was a seller on an infringing product listing, offered shipping of that product to Illinois, received an order for the product from a customer in Illinois, and cancelled that order shortly after it was placed. This evidence includes: (1) screenshots of the infringing listing showing each Appearing Defendant offering shipping to Illinois (Dkt. No. 57-3, 4); (2) copies of the confirmation and cancellation e-mails from each Appearing Defendant (Dkt. No. 57-4, 5); and (3) a sworn description of how sellers on Walmart.com may use "shipping templates" to "select the states in which they will offer to sell and ship products" (Decl. of Jennifer V. Nacht ¶ 6, Dkt. No. 57). Meanwhile, Appearing Defendants have submitted declarations stating that neither of them have "sold or shipped any accused products to Illinois," supported by screenshots of their seller portals showing zero completed sales of the alleged infringing product. (Decl. of Yinhang Xiao ¶ 7, Dkt. No. 50-2; Decl. of Tianyu Peng ¶ 7, Dkt. No. 50-3.)

Weighing the evidence and resolving evidentiary conflicts in BBC Studios's favor, the Court determines that BBC Studios has sufficiently established Appearing Defendants' minimum contacts. It is undisputed that Appearing Defendants offered the accused products for sale to purchasers in Illinois and, in fact, accepted an order from a customer in Illinois. Had Appearing Defendants wished to exclude Illinois residents from their consumer base, they could have done so through the seller portal. (*See* Decl. of Jennifer V. Nacht ¶ 6, Dkt. No. 57.); *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 908 (N.D. Ill. 2015) (concluding that defendants purposely availed themselves to Illinois consumers, absent a completed sale, in part because they "affirmatively selected a shipping template to ship [infringing products] to United States and Illinois residents"). They did not.

Furthermore, Court agrees with other courts in this District that, once a seller has advertised to and accepted orders for an infringing product from Illinois customers, it cannot thwart personal jurisdiction in Illinois by canceling those orders at the last moment. *See Pit Viper, LLC v. Xi'an Jiaye Tengda Trading Co.*, No. 23 C 14761, 2024 WL 5039888, at *5 (N.D. Ill. Dec. 9, 2024) ("[The defendant] structured its activities to target United States and Illinois consumers, and it initially accepted the test order with an Illinois shipping address. The Court cannot allow [the defendant] to avoid this Court's jurisdiction by apparently cancelling a test order for the Counterfeit Product five days after it was placed . . . ."); 12/19/2024 Order (Dkt. No. 47), *NBA Props., Inc. v. The P'ships and Unincorporated Ass'ns Identified on Sched. "A"*, No. 24-cv-10160 (N.D. Ill. Dec. 19, 2024) (same); *cf. Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 278 (2d Cir. 2024) (same).

Granting Appearing Defendants' motion to dismiss would risk allowing sellers to offer infringing products for sale in Illinois and receive orders from Illinois consumers, only to escape jurisdiction by pointing to their "customers in Illinois and tell[ing] [courts], 'It was all their idea.'" *See NBA Props.*, 46 F.4th at 622. This is not to say that jurisdiction is established merely because a defendant operated a website accessible in Illinois. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) (noting concern that "premising personal jurisdiction on the maintenance of a website, without requiring some level of interactivity between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the county" (internal quotation marks omitted)). Appearing

Defendants' actions went far beyond merely operating an interactive website. They took affirmative steps to invite purchases from Illinois consumers, culminating in an order actually being placed. *See id.* (finding specific jurisdiction "not merely because [the defendant] operated several 'interactive' websites, but because [it] had sufficient voluntary contacts with the state of Illinois."). In short, the Court finds that BBC Studios has made a *prima facie* showing that Appearing Defendants "structur[ed] [their] own activities so as to target the Illinois market." *NBA Props.*, 46 F.4th at 624; *see also BRABUS GmbH v. Individuals Identified on Schedule A Hereto*, No. 20-CV-03720, 2022 WL 7501046, at *3 (N.D. Ill. Oct. 13, 2022) (finding that the defendant "purposefully directed its actions toward Illinois" despite the absence of a completed sale, because the record showed that the defendant "was ready, willing, and able to ship products to" Illinois).

None of Appearing Defendants' arguments to the contrary are persuasive. First, they contend that they cancelled the order not to evade jurisdiction but rather because they did not actually offer the infringing products for sale. However, the cancellation emails in the record state a different reason for the cancellation: "We're sorry, we can't deliver to the address you provided, so we had to cancel." (Exs. 5, 6 to Decl. of Jennifer V. Nacht.) The conflicting reasons given for canceling the order undermine the credibility of Appearing Defendants' preferred explanation that they cancelled the order because they did not actually sell the product (despite advertising it for sale). And even accepting Appearing Defendants' preferred explanation, BBC Studios has met its burden by showing that Appearing Defendants directed their business to Illinois residents up to the point of receiving an order. Second, that Appearing Defendants may have been mere "piggyback sellers" on another person's listing, even if true, does not preclude a finding of personal jurisdiction. Based on the record before the Court, it is undisputed that Appearing Defendants were sellers on a listing that infringed BBC Studios's intellectual property and invited orders from Illinois, and that a customer in Illinois did in fact initiate an order through the listing.

BBC Studios has also satisfied the remaining requirements for personal jurisdiction. First, Appearing Defendants' contacts with Illinois are "suit-related." *See NBA Props.*, 46 F.4th at 625 ("[Defendant's] listing of its product on Amazon.com and its sale of the product to counsel are certainly related sufficiently to the harm of likelihood of confusion."). And second, this Court's exercise of jurisdiction over Appearing Defendants would not offend traditional notions of fair play and substantial justice, as there is "no unfairness in making a seller defend a suit in a state where it structured its business to easily serve the state's consumers." *Id.* at 627 (internal quotation marks omitted).

In sum, because BBC Studios has made out a *prima facie* showing of specific personal jurisdiction, the motion to dismiss for lack of personal jurisdiction is denied.

## II. Plaintiff's Motion for Entry of a Preliminary Injunction

Having denied Appearing Defendants' motion to dismiss for lack of personal jurisdiction, the Court turns to BBC Studios's request for a preliminary injunction. The Court previously entered an *ex parte* TRO against all defendants on July 2, 2025. The TRO includes an asset restraint, which enjoins the defendants from transferring assets until further court order. The restraint froze in their seller accounts $1,278.86 of SANHE's assets and $32,161.30 of YUTI's assets. (Pl.'s Resp. to the Court Order at 3, Dkt. No. 39.) Thereafter, on July 16, 2025, BBC

Studios filed a motion for a preliminary injunction. The Appearing Defendants are the only defendants that have opposed the request.

"A preliminary injunction may be granted where a movant shows that it is likely to succeed on the merits of its claims and that traditional legal remedies would be inadequate, such that it would suffer irreparable harm without injunctive relief." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 843 (7th Cir. 2023). "Upon a showing of these threshold issues, the court weighs the harm of denying an injunction to the movant against the harm of granting an injunction to the nonmovant. This is done using a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Id.* at 844. "The court also considers the public interest." *Id.*

### A. Likelihood of Success on the Merits

First, BBC Studios has made a strong showing that it is likely to succeed on the merits. To succeed on a trademark infringement claim, a plaintiff must "show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Ent., LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016). As to copyright infringement, a plaintiff "must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007). Appearing Defendants do not dispute the validity of BBC Studios's copyrights and trademarks. It is also undisputed that the product listing at issue used the Bluey copyrights and trademarks. Indeed, the alleged infringement is readily observable from the screenshot evidence. The listing offered an item called "Bluey's Exclusive Advent Calendar Pack," which contained "a Bluey Surprise Each Day for 24 days." (Ex. 1 to Def.'s Resp. to Mot. for Entry of Prelim. Inj. at 2, Dkt. No. 43-1.) The product pictured in the listing was itself decorated with the Bluey mark and depictions of characters covered by BBC Studios's Bluey copyrights. (*Id.*) Appearing Defendants were listed as sellers of these products. (*Id.* at 3, 7.)

Nevertheless, Appearing Defendants argue that they never infringed BBC Studios's copyrights or trademarks because they were merely "piggyback" sellers on the infringing listing and never sold an infringing product themselves. In essence, Appearing Defendants suggest that, because they did not create or edit the infringing listing and never completed a sale of the product, they did not infringe BBC Studios's intellectual property. However, neither a sale nor intent to infringe are necessary elements of trademark or copyright infringement claims. Because trademark infringement requires only a "likelihood of confusion," and not "actual confusion," "[a] vendor violates the Lanham Act when it ***lists*** for sale infringing products." *NBA Props.*, 46 F.4th at 626 (emphasis added); *see also, e.g.*, *Monster Energy Co.*, 136 F. Supp. 3d at 904 ("[A]n offer to sell an infringing or counterfeit item, even without any other activity, establishes liability for trademark infringement and counterfeiting."); *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 359–60 (7th Cir. 1983) (explaining that "[a] finding of fraudulent intent or bad faith is not essential to prove infringement where likelihood of confusion already exists," though "wrongful intent [may] be counted as a factor in favor of infringement"). Likewise, even if the "evidence supports [a defendant's] lack of knowledge, liability for copyright infringement exists even when the defendant 'was not aware and had no reason to believe that his or her acts constituted an infringement of copyright.'" *Bell v. Merchants Bank of Ind.*, 456 F. Supp. 3d 1046, 1051 (S.D. Ind. 2020) (quoting 17 U.S.C. § 504(c)(2)) (collecting cases).

In short, because Appearing Defendants' listing clearly used unauthorized copies of BBC Studios's copyrighted works and trademarks, BBC Studios has sufficiently proved a likelihood of success on its trademark and copyright claims.

### B. Irreparable Harm and Inadequacy of Legal Remedies

BBC Studios has also shown that it is likely to suffer irreparable harm without an injunction. "In the context of trademark law, once the movant establishes a likelihood of success on the merits, it is statutorily entitled to a rebuttable presumption of irreparable harm." *Grubhub*, 80 F.4th at 844 (citing 15 U.S.C. § 1116(a)). Although no such presumption exists for copyright infringement, "it is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). As this Court determined in granting the TRO, BBC Studios has shown that the defendants' infringing activities caused losses to its goodwill and reputation. "Monetary damages are likely to be inadequate compensation for such harm." *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979). Accordingly, the Court's finding of harm to goodwill and reputation is "sufficient to sustain [a preliminary] injunction." *Life Spine*, 8 F.4th at 546.

Nonetheless, Appearing Defendants contend that injunctive relief is unnecessary to prevent harm to BBC Studios because the accused listings have been taken down, and at least one of their walmart.com seller accounts has been terminated entirely. It is true that "[c]essation of the allegedly illegal conduct . . . [may] impact[] the ability to show substantial and irreparable injury." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 748 (7th Cir. 1999). But "[t]he court may consider how easily former practices might be resumed at any time in determining the appropriateness of injunctive relief." *United Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l*, 563 F.3d 257, 275 (7th Cir. 2009). And because there are many online marketplaces besides walmart.com, Appearing Defendants may still list infringing products elsewhere. Accordingly, an injunction remains warranted.

Appearing Defendants also argue that an injunction is inappropriate because, by their count, BBC Studios delayed seeking injunctive relief for five months. They base this assertion on the fact that BBC Studios appears to have been investigating Appearing Defendants' infringement as early as January 2025 but did not seek a TRO until June 2025. But while Appearing Defendants are correct that a plaintiff's unreasonable delay may undercut the immediacy of its claimed harm, *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 909 (N.D. Ill. 2019), such a delay is not dispositive, particularly where "the delay was caused by 'the plaintiff's making good faith efforts to investigate the alleged infringement.'" *Id.* at 910 (quoting *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). In a case involving dozens of foreign defendants with unknown identities, it reasonably may take several months for a plaintiff to complete a good-faith investigation into the defendants' activities before bringing suit. *See Milwaukee Elec. Tool Corp. v. Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Sched. "A"*, No. 24 C 12487, 2025 WL 1677503, at *4 (N.D. Ill. June 13, 2025) (excusing 13-month delay because "[i]nfringement cases of this particular nature are time-intensive and require extensive investigation and preparation before filing"). And BBC Studios acted quickly as soon as it brought its claims; within four days of filing the complaint, it moved for a TRO. (*See* Dkt. Nos. 1, 13.) This Court declines to foreclose

preliminary injunctive relief because BBC Studios may have spent several months investigating the defendants' conduct before filing suit.

### C. Balance of Harms and the Public Interest

The "balance of harms need not weigh as heavily in [BBC Studios's] favor" because it is "likely to win on the merits." *Life Spine*, 8 F.4th at 539. That said, given that Appearing Defendants claim not to sell the infringing products, an injunction preventing them from doing so will affect their business minimally. Meanwhile, BBC Studios has a strong interest in protecting its intellectual property from infringement. Thus, the balance of harms favors BBC Studios. Likewise, the public interest favors BBC Studios because "enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co. v. Nat. Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000). Thus, the Court finds that a preliminary injunction is warranted to prevent Appearing Defendants from offering or selling products using the infringing trademarks or copyrights.

### D. The Asset Restraint

For the above reasons, BBC Studios has made a sufficient showing under Rule 65 to support a preliminary injunction against further infringement of its trademarks and copyrights. However, it does not necessarily follow that an asset restraint is appropriate. "[A]sset restraints are extraordinary measures, to be used only to preserve equitable remedies like an accounting of profits, not legal remedies." *Innovation Indus., LLC v. P'ships Identified on Sched. A*, No. 25 C 3157, 2025 WL 2996794, at *4 (N.D. Ill. Oct. 24, 2025). Thus, "if the amount of the profits is known, then the asset freeze should apply only to that specific amount, and no more." *Roadget Bus. Pte. Ltd. v. Individuals, Corp., LLC*, 735 F. Supp. 3d 981, 983 (N.D. Ill. 2024).

Appearing Defendants argue that the asset restraint imposed by the TRO should be released because they have earned no revenue from selling the alleged infringing product. They have provided sworn declarations stating as much, supported by screenshots of their walmart.com seller portals showing zero revenue from sales of the product. (Decl. of Yinhang Xiao ¶ 4 & Attach. 1, Dkt. No. 43-2; Decl. of Tianyu Peng ¶ 4 & Attach. 1, Dkt. No. 43-3.) Meanwhile, BBC Studios does not respond with any contradictory evidence. Instead, it insists that an asset restraint is proper because "Defendants did not provide [to BBC Studios] a full accounting of their Walmart accounts" or other listings. (Pl.'s Reply at 15, Dkt. No. 52.) However, BBC Studios has been able to seek such an accounting from the third-party platform since July 2025 pursuant to the TRO. (TRO ¶ 2(b), Dkt. No. 24.) Moreover, if the Appearing Defendants or the third-party platform refused to provide required information, BBC Studios could have filed a motion to compel or sought other relief from the Court. Yet BBC Studios does not appear to have made full use of the discovery tools available to it. Meanwhile, Appearing Defendants have presented uncontroverted evidence that they generated no revenue from sales of the accused product. Indeed, the one sale to which BBC Studios points to support personal jurisdiction was subsequently cancelled and therefore does not appear to have generated any revenue for Appearing Defendant.

Thus, based on the record before the Court, there is not a sufficient basis to maintain the extraordinary relief of an asset restraint against SANHE and YUTI. A preliminary injunction will issue as to Appearing Defendants but it will not include the asset restraint present in the TRO.

**III.     Conclusion**

For the foregoing reasons, Appearing Defendants' motion to dismiss (Dkt. No. 50) is denied. Plaintiff's motion for entry of a preliminary injunction (Dkt. No. 32) is granted but without an asset restraint as to Defendants SANHE Co., Ltd. and YUTI Co., Ltd. The Court further notes that the majority of the defendants in this case have not appeared and thus have not presented any evidence or argument to counter those offered by BBC Studios in favor of a preliminary injunction with an asset freeze. For this reason, as stated on the record at the December 22, 2025 hearing, the Court grants BBC Studios a preliminary injunction with the requested asset restraint as to the Non-Appearing Defendants.

Dated:  December 28, 2025

                                                                                   _____
                                                                                   Andrea R. Wood
                                                                                   United States District Judge